UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARD D. RODRIGUE,

    Plaintiff,

v.                                                    Case No. 8:10-cv-2555-T-27TBM

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of his claim for Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was forty-seven years of age at the time of his administrative hearing in June 2009. He stands 6 feet tall and weighed 175 pounds according to his administrative filings. Plaintiff has a high school education and vocational training in computer repair. Plaintiff has no past relevant work.[1] Plaintiff applied for Supplemental Security Income payments in

---

[1] In his administrative filings, Plaintiff identified various prior work including painting, carpentry, bartending, metal worker, and construction laborer.

August 2006, alleging disability as of October 3, 2000,[2] by reason of back injury, steel plate in right foot, right hand and left wrist problems, bipolar disorder, and depression. Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. Additionally, a vocational expert was called by the ALJ. In essence, Plaintiff testified that he is unable to work due to lack of focus, anxiety, and depression. He also has problems with his left wrist, which has six screws in it, being weak and aching. Because of the problems with his wrist, he can lift no more than twenty-five pounds and no more than fifteen pounds repetitively. He has eight screws in his right foot which make it difficult to walk. By his account, he does not walk much, about a mile a day. Plaintiff has a history of a rotator cuff operation on his left shoulder and he still experiences difficulty with the shoulder. He also claims carpal tunnel syndrome in his dominant right hand. As a result, he cannot grasp the way he used to because his thumb does not bend. The bone of his thumb was fused so it does not bend at all. The right hand aches daily, especially the more he uses it or when the weather changes. Plaintiff is not able to hold a pen or write for longer than a page otherwise his hand cramps up. Plaintiff also testified to problems with his lower back. He has three bulging discs. His low back pain is aggravated by weather changes or if he lifts anything, and he is unable to sit for longer than an hour or two before needing to get up and move around.

---

[2]At the administrative hearing, Plaintiff amended his onset date to be August 31, 2006.

Plaintiff's mental impairments existed for years, but they were made worse when he hit his head in his accident of 1993.[3] Plaintiff has treated various places for his mental impairments including Directions for Mental Health, PEMHS, Windmoor, Charlotte County Behavioral Center, and Suncoast Mental Health. He describes his problems as racing thoughts, deep depression, inability to focus, and voices in his head. He gets nervous and paranoid around strangers. Plaintiff has difficulty sleeping and will only sleep for two to three hours at a time. He wakes up with nightmares and anxiety. His anxiety has caused him to vomit. Plaintiff testified he has painful memories as a four or five-year old when a group of children exposed him in public. He gets frustrated because he is not able to lead a normal life. His energy level is low, and he fears leaving his house sometimes because he thinks people are judging him. Two to three days a week he will need naps during the day for an hour or two. He sometimes has crying spells when he is sad, and he has low self esteem. By his account, he has five to ten "good days" out of a month in which he is fairly functional.

Plaintiff testified he last worked the week prior to his hearing. He cleaned his landlord's yard for a "few dollars." About a year and a half prior to that he did painting and carpentry work with Doyle Construction. He only worked for two months at that time because he had a hard time focusing and could not keep up with the stress of the job.

As for daily activities, Plaintiff reads, visits the library, and goes fishing. He is able to shop for himself at the grocery store. He uses food stamps. He can cook, mostly in a crock pot. He attends AA meetings a couple times a week and goes to church on Sundays. He is

---

[3]Plaintiff testified that his physical injuries were as a result of his fall in 1993. In his summation, Plaintiff's counsel claimed that Plaintiff fell forty feet off a scaffolding.

3

able to use public transportation. When asked if he was clean and sober, he testified that he still battles with that. He last drank alcohol four or five days prior to his administrative hearing. He denied the use of any illegal drugs. He was taking prescription pain medication, but that led him to drink more so he no longer can take Hydrocodone.

His longest period of sobriety was three years. He testified that he was still having mental health problems then. During that time frame, he was taking a computer repair course and still had difficulty getting through the course because of his inability to focus. Even though he was sober and was taking his medication, Plaintiff still experienced anxiety, depression, and racing thoughts. (R. 46-64).

Next the ALJ called Theresa Manning, a vocational expert (VE), to testify. In pertinent part, the VE testified upon a hypothetical that assumed an individual of the same age and education as Plaintiff with no past relevant work experience who is capable of lifting, carrying, pushing and pulling twenty pounds on occasion, and ten pounds frequently; who could sit, stand or walk six to eight hours in an eight-hour day; with only occasional climbing, balancing, stooping, or crouching, and no work around dangerous machinery or unprotected heights; limited to no detailed or complex work, and only occasional interaction with the public. On such hypothetical, the VE opined that the jobs of retail marker, garment sorter, and laundry folder would be available. With the added limitation that the hypothetical individual could frequently reach, handle, finger and feel, these jobs would still be able. However, if such individual was limited to only occasional reaching, handling, fingering, and feeling, there would be no competitive employment available.

Upon questioning by Plaintiff's counsel, the VE testified that if the individual had only 5 to 10 functional days out of a month, there would be no work available. Similarly, if the individual had to nap for one to two hours two to three times during the workweek, that would generally limit available competitive employment. (R. 65-68).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail.

By her decision of August 5, 2009, the ALJ determined that Plaintiff has the following severe combination of impairments: remote history of traumatic musculoskeletal injuries, lumbar spondylosis, history of left shoulder rotator cuff surgery, traumatic arthritis, bipolar disorder, and substance abuse. She further found that the Plaintiff's mental impairment, including the substance use disorder, met sections 12.04 and 12.09 of CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)). The ALJ determined that if the Plaintiff stopped the substance abuse, his remaining impairments related to musculoskeletal injuries and bipolar disorder would continue to have more than minimal affect on his ability to perform work related activities. Nonetheless, he retained the residual functional capacity to perform light[4] exertional work, limited by the need to avoid all dangerous moving machinery and unprotected heights and not requiring the performance of detailed or complex mental

---

[4] Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

5

tasks, with no more than occasional interaction with the public. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 32-41). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton*

*v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ should have determined that the claimant had a marked inability to concentrate even without the use of alcohol; and

(2) A consulting doctor found that the claimant had a limited range of motion of his right wrist and thumb. The ALJ failed to assess what weight to give to this opinion and whether or not to incorporate it within the residual functional capacity assessment. (Doc. 17).

By his first claim, Plaintiff urges that the ALJ erred in not finding he had markedly impaired concentration regardless of the use of alcohol. In support, he notes that while his hospitalizations usually involved alcohol abuse, the hospitalization in June 2008 did not. *See* (R. 362-68).[5] He urges that other medical records also reflect severely impaired concentration even without the alcohol. More particularly, the medical records from Directions for Mental Health between December 2006 and September 2007 document his racing thoughts, high anxiety, and panic attacks and reflect GAF scores below 55. Records from Suncoast Center for Community Mental Health, between June 2008 and March 2009, reveal lower GAF scores. Plaintiff concedes that he has a significant drinking problem which leads to decompensation and the inability to concentrate. However, he urges that when he does not drink, even though he does not decompensate, he continues to suffer anxiety and racing thoughts which result in a marked inability to concentrate. Thus, the ALJ's finding of only a moderate deficit in concentration is unsupported by substantial evidence and the case should be remanded for further consideration. (Doc. 17 at 11-13).

In response, the Commissioner notes that the June 2008 hospital records referred to reflect that Plaintiff was non-compliant with medication and positive for alcohol. (R. 364, 367). Further, by Plaintiff's own submissions, he always has something to drink. And,

---

[5]The records indicate that Plaintiff came in on a Baker Act feeling suicidal. He denied any substance abuse. He was stabilized and released.

8

contrary to his claim otherwise, Plaintiff has failed to show support in the record that even without the use of alcohol he has a marked inability to concentrate. As the decision reflects, there is contrary evidence to support the ALJ's conclusion for only a moderate limitation when he is not drinking. The regulations require that if a claimant is disabled and drug or alcohol is a material contributing factor, the claimant is not entitled to benefits. Here, the Commissioner urges that the ALJ properly determined that Plaintiff had a severe impairment involving substance abuse, and properly evaluated the Plaintiff's RFC absent the drug and alcohol abuse such that the decision should be affirmed. (Doc. 18 at 10).

Upon review of the medical evidence, I am obliged to conclude that the ALJ's finding that Plaintiff, when clean and sober, suffered no more than moderate limitation in concentration by reason of his bipolar disorder is supported by substantial evidence. First, while Plaintiff highlights portions of his treatment record, it is apparent that the ALJ drew her conclusions after a full review of the whole of Plaintiff's mental health history, not just those portions here relied upon by Plaintiff. (R. 35-38). And, contrary to Plaintiff's urging, this record, including the portions cited by Plaintiff generally reflected lesser functional limitations when substance abuse was not involved. Further, this record reveals that substance abuse was an ongoing issue and played a contributing role in most of Plaintiff's treatment, even in periods when he claimed to be clean and sober. As the Commissioner urges, under current law, the statutory definition of disability under the Social Security Act precludes the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled. *See* Pub. L. No. 104-121 § 105; 42 U.S.C. § 423(d)(2). The implementing regulation establishes the standard for determining whether the

claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability. Under the regulations:

> (b)(1) The key factor . . . in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol. (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 416.935(b). In this Circuit, the claimant bears the burden of proving his substance abuse was not a contributing factor material to a finding of disability. Stated otherwise, the Plaintiff bears the burden of proving he would be disabled if he stopped using drugs and alcohol. *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001).

Here, Plaintiff has not met his burden. He urges, with little medical support that even without his alcohol abuse, he suffers marked limitations in his concentration. He urges such is demonstrated from complaints of racing thoughts and anxiety. He cites a hospitalization in June 2008 (R. 362-68) and to repeated GAF scores between 50 and 55 while he was treated at Directions for Mental Health (R. 334-61), and scores below that while he

10

was treated at Suncoast Center for Community Mental Health (R. 369-95, 397-413). Without more, he urges that these support the conclusion that the ALJ erred in finding only moderate restriction in concentration when he is clean and sober. By my review, even if the records from this brief hospitalization do not reveal substance abuse, which I think is a questionable assumption, they do not speak to the matter of Plaintiff's concentration apart from the low GAF score. *See* (R. 362-69). As for the GAF scores reflected in this record, on the whole, they tend to support the ALJ's conclusion for moderate limitations when considered along with the whole of the other health record.

GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV). A GAF score of 51 to 60 means moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers), and a GAF of 41-50 indicates either serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* A low GAF score, however, does not require a finding of disability. *Seymore v. Apfel*, 131 F.3d 152, at \*2 (10th Cir. 1997) (unpublished table decision) ("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work"); *accord Cox v. Apfel*, No. 99-2296-JWL,

2000 WL 1472729, at *9 (D. Kan. Feb. 24, 2000). Nor does a low GAF score translate into a specific finding in regard to functional limitations. *See Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (May 8, 2008).

Here, while notes from Directions for Mental Health reflect GAF scores between 50 and 55, such scores suggest only moderate symptoms and limitations, and alone do not reveal a marked limitation in concentration. The lower GAF scores reflected in the notes from the hospitalization and Suncoast Center for Community Mental Health do suggest greater symptoms, but it is difficult to read these records and conclude that Plaintiff's substance abuse, even when in temporary remission, played no role in these assessments. Thus, records from the June 2008 hospitalization do reflect alcohol involvement despite Plaintiff's denial. (R. 367). And, those from Suncoast Center for Community Mental Health, also suggest some alcohol involvement. *See e.g.* (R. 370, 377). In any event, and more to the point, the whole of the medical record suggests Plaintiff suffers lesser functional limitations when he is clean and sober.

As noted above, it is the ALJ's obligation to evaluate and weigh the evidence. If such conclusions as are drawn from that evaluation are supported by substantial evidence, the decision is appropriately affirmed. Here, I conclude that there is substantial evidence to support the conclusion that Plaintiff's mental functioning is improved when he is clean and sober and the specific conclusion that his concentration during such periods is only moderately limited. Plaintiff fails to demonstrate otherwise and thus is entitled to no relief on this claim.

On his second claim, Plaintiff urges that the ALJ failed to properly assess the injuries to his right wrist and thumb and to state with particularity the amount of weight to be attributed to the opinion of Dr. Beamon, a consulting doctor, who found Plaintiff had a limited range of motion in his right wrist and thumb. (R. 308). If the ALJ agreed with the opinion, she should have incorporated it into the Plaintiff's RFC and if such limitation were included in the RFC, it would have impacted what jobs the hypothetical claimant could perform. Because the ALJ failed to state what weight should be given this opinion, the matter should be remanded to determine the amount of weight to attribute to this opinion and whether the right hand limitation should be incorporated in the RFC assessment. (Doc. 17 at 13-14).

By the Commissioner's response, the ALJ did not err as her RFC findings were generally consistent with the findings and opinion of examining physician, Dr. Beaman. Contrary to Plaintiff's urging, the ALJ did note Dr. Beaman's findings of slight limited range of motion of the wrists and a limited range of motion of the wrist, thumb, and great toe. In fact, the ALJ accorded significant weight to Dr. Beaman's opinions and Plaintiff has failed to demonstrate additional limitations to the RFC than that found by the ALJ. (Doc. 18 at 9-10).

The Commissioner is correct. Here, the record indicates that in February 2007 Dr. Thomas F. Beaman, D.O., performed a disability physical on Plaintiff and gave impressions for chronic lumbar pain secondary to bulging discs, *limited range of motion of his wrist and thumb and great toe secondary to a fall and recurrent surgeries*, and history of bipolar disorder (not revealed by physical examination). (R. 308). In his decision, the ALJ expressly referenced the examination by Dr. Beaman as well as a number of comments made by Plaintiff to him, and a fair reading of the decision reveals that the ALJ gave considerable

weight to the opinions and evidence from this consulting doctor.[6] More particularly, the ALJ noted,

> In February 2007, a consultative examination was conducted by Dr. Beaman. The claimant complained of a fall and multiple injuries in 1993, rotator cuff surgery, and development of arthritis in his back and hand. He reported that he could lift 25 pounds; he had no problem handling; he could walk one mile; and he could sit for 30 minutes. The claimant also reported that he was working for his landlord to help with the rent payment. Examination revealed minimal atrophy of the right hand, slight limitation of motion of the wrists, but 5/5 strength, normal sensation, good grip, intact manipulation, no tenderness or muscle spasm in the back, negative straight leg raises, no fatigue with repetitive muscle testing, and the claimant was able to get on and off the exam table without difficulty. Dr. Beaman diagnosed chronic lumbar pain secondary to bulging disc and limitation of motion of the left wrist and right thumb (Exhibit 9F).
>
> Thus, the record shows a history of severe musculoskeletal injuries apparently requiring surgery and an extended period of recovery, but only minimal treatment and minimal findings in the back, wrist, and hand during the period at issue. The evidence does not support a diagnosis of carpal tunnel syndrome. The claimant did not require strong pain medication on a regular basis and denied any significant adverse side effects of medication. The claimant reported that he was still able to lift 25 pounds, walk one mile, ride his bike, take the bus, go fishing, do shopping, cooking, and laundry, write a page, and sit for 30 minutes to 3 hours (Exhibit 4E, 7E, 9F). He denied any problem handling when he was examined by Dr. Beaman (Exhibit 9F). Dr. Shah, Dr. Khan, and Dr. Beaman did not assess any restrictions or limitations of the claimant's work-related activities and the claimant continued to work various jobs during the period at issue (Exhibit l6F). The State agency concluded that the claimant remained able to perform medium exertional level work activity (Exhibit 10F). However, considering the comprehensive examination findings of Dr. Beaman and the documented x-ray findings, the undersigned finds that the established residual functional capacity for light work is better supported and well supported by the record.

(R. 39-40). Thus, contrary to Plaintiff's assertions, the ALJ gave full consideration to the clinical findings by this doctor, including those related to Plaintiff's hands and wrists and

---

[6]A range of motion report appended to Dr. Beaman's narrative found slightly reduced range of motion in the left wrist, right hand, and right great toe. (R. 310-11).

14

indeed relied on the same for concluding his residual functional capacity assessment for a restricted range of light work. By Plaintiff's own account to this doctor, he had no problem handling objects and clinical findings included that: Plaintiff's muscle strength was +5/5 and equal in all four extremities; he had good grip and intact manipulation; there was no evidence of motor deficit in any of the extremities; sensory exam was within normal limits; grip strength was 90 pounds in the right hand, 80 pounds in the left hand; and fine manipulation was intact. (R. 308). Thus, by my consideration, the doctor's impressions regarding Plaintiff's hands and wrist were adequately considered and evaluated by the ALJ in arriving at her RFC assessment. As urged by the Commissioner, Plaintiff makes no showing of any additional limitations that should have been included in this RFC that were not. Plaintiff is not entitled to a remand on this claim.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

> Respectfully submitted this
> 6th day of December 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
Honorable James D. Whittemore, United States District Judge
Counsel of Record